UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

ANTHONY JOSEPH DEPA

CRIMINAL ACTION

NO. 25-46-JWD-EWD

**RULING AND ORDER**

Pending before the Court is the *United States' Motion for Revocation of Release Order* ("*Motion for Revocation*") (Doc. 23) filed by the Government. Defendant has filed an *Opposition to Government's Motion to Revoke Release Order Under 18 U.S.C. § 3145* ("*Opposition*") (Doc. 29), and the Government has filed a *Reply Brief in Support of United States' Motion for Revocation of Release Order* ("*Reply*") (Doc. 32). A hearing is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Government's motion is granted.

**I.    BACKGROUND**

    **A.    Factual Background**

The Government alleges that Defendant has "repeatedly threatened, harassed, and intimidated" three individuals who live in the Middle District of Louisiana since January of 2025. (Doc. 1 at 1.) It asserts that Defendant, who grew up in Louisiana but has more recently lived in California and Nevada, knew these individuals when he lived in Louisiana. (*Id.*) The Government claims that Defendant threatened to kill these individuals and their family members via text, email, audio file, and video messages. (*Id.* at 1–2.) The Government alleges that Defendant sent a video of his genitals and described in graphic detail the sexual violence he intended to inflict on one individual's wife. (*Id.* at 2.)

1

In mid to late February of 2025, two protective orders were entered in the 23rd Judicial District, ordering Defendant to maintain a distance from at least one individual. (Doc. 32 at 2.) The Government alleges that despite this, Defendant continued to send threatening messages to all of the alleged victims in the Middle District of Louisiana throughout the month of March.

In addition, the Government alleges, by mid-March of 2025, Defendant "began to threaten, harass, and intimidate" two other individuals who he met when he attended college with them in another state. (Doc. 1 at 1, 3.) These included death threats to the individuals and to their family members. (*Id.* at 3.)

**B.    Procedural Background**

A detention hearing was originally held in this case before the Magistrate Judge on May 20, 2025. One witness testified on behalf of the Government, three witnesses testified on behalf of Defendant, and evidence was received into the record. (*See* Doc. 20.) The Magistrate Judge held that the Government failed to prove by clear and convincing evidence that no conditions exist that will reasonably assure the safety of the community, and that the Government likewise failed to prove by a preponderance of the evidence that no conditions exist that will reasonably assure Defendant's appearance in Court. (*See id.*) As a result, the Magistrate Judge released Defendant on bail with an order setting conditions of release. (*See id.*; *see* Doc. 22.) The Court granted the Government's oral motion to stay the release pending consideration of a possible appeal and stayed the release until 5 p.m. on Wednesday, May 21, 2025, to allow the Government to file an appeal. (Doc. 20 at 2.) The Government then filed the pending *Motion for Revocation*, (Doc. 23), which Defendant opposes, (Doc. 29). The Government filed a *Reply Brief in Support of United States' Motion for Revocation of Release Order*, (Doc. 32). Defendant has remained in custody pending the Court's ruling on the *Motion for Revocation*. (*See* Doc. 29 at 1.)

## II.   PARTIES' ARGUMENTS

### A.   *Motion for Revocation* (Doc. 23)

In the *Motion for Revocation*, the Government argues that Defendant has "repeatedly threatened to kill and injure the victims and their family members" via "emails, voicemails, and video files" that he sent to them. (Doc. 23-1 at 1.) The Government contends that "the only thing that has stopped the defendant from threatening to kill, rape, and injure his victims has been incarceration." (*Id.* at 2.) According to the Government, protective orders did not stop Defendant from threatening the purported victims—instead, his "threats did not stop until he was arrested in late March and held in custody." (*Id.* at 3.) The Government argues that this case "involves a serious risk that the defendant will threaten, injure, and/or intimidate victims and witnesses." (*Id.*)

The Government asserts that it has the option to file a motion for revocation under 18 U.S.C. § 3145(a)(1). (*Id.* at 4.) It points to the standard of review outlined by the Fifth Circuit in *United States v. Thibodeaux* for district courts in considering magistrate judges' release orders. (*Id.* (citing *Thibodeaux*, 663 F.2d 520, 522 (5th Cir. 1981)).) In addition, the Government points to the requirements set forth for determining that a defendant poses a risk of danger to the community or another person. (*Id.* at 4–5.) The Government emphasizes that the danger of harm described in the statute is not limited to physical harm. (*Id.* at 5.)

With respect to the detention hearing held before the Magistrate Judge, the Government first points to the Pretrial Services Report produced by the United States Probation & Pretrial Services Office, which recommended that Defendant be detained pending trial due to the risk of non-appearance and risk of danger he poses. (*Id.*) The Government asserts that it presented evidence at the hearing from FBI Special Agent Nathaniel Carrier describing the FBI's investigation and presenting examples of the threats Defendant sent, as well as the two protective

3

orders entered by the state courts. (*Id.* at 5–6.) One of these two protective orders "included a judicial finding that the defendant represented a credible threat to the physical safety of one of his victims." (*Id.* at 6.) The Government claims that despite these protective orders, Defendant continued to threaten his alleged victims and their families with graphic sexual threats, sexual slurs, and homophobic slurs. (*Id.* at 6–7.) According to the Government, "since late January, the only thing that has stopped the defendant has been confinement." (*Id.* at 7.)

The Government argues that Defendant presented evidence from character witnesses that was either "simply not credible" or who testified to relationships with Defendant that were not based on interactions from the past year or more. (*Id.* at 8.)

According to the Government, while the Magistrate Judge found that the first two § 3142(g) factors weigh in favor of detention, she did not find that the latter two do. (*Id.* at 9–10.) The Government asserts that the Magistrate Judge found that the nature and circumstances of the offense—threats "from an old acquaintance who is suffering from untreated mental health issues and who knows his victims' names and where they live[]" that loved ones will be raped and murdered—weigh in favor of detention. (*Id.* at 9.) Likewise, the Government argues that "[t]here is no reasonable dispute that the defendant is the person who sent the threats" and that Defendant did not contest this at the hearing. (*Id.*) However, the Government maintains that the Court "overlooked [] relevant testimony" with respect to the third factor, the nature and characteristics of the defendant. (*Id.* at 10.) Specifically, the Government argues that Defendant does not have strong ties to the community at the moment—it points to his frequent recent interstate moves, from North Carolina late last year, where he was "living with a friend . . . until he was kicked out; . . . to Kansas, where he was living in a college dorm, until he was arrested and kicked out;" and, since January, "between California and Nevada." (*Id.*) The Government argues that Defendant's "last

4

two visits to Lafayette[,]" where he was raised and where his mother is offering for him to stay, "have been short-lived; both times, he has gotten in trouble and been arrested." (*Id.*)

Finally, the Government contends that the Magistrate Judge "determined that," although it was a difficult decision, "with certain conditions (including location monitoring and another order not to contact his victims), pre-trial supervision will be sufficient to protect victims from further harm." (*Id.* at 10–11.) The Government argues that these conditions "are inadequate." (*Id.* at 11.) It asserts that "[D]efendant's behavior clearly establishes that he is unable, or unwilling, to abide by the protective orders, and he is unwilling to seek treatment for his mental health." (*Id.*) The Government argues that just because it "did not present evidence that defendant has attempted to take steps aimed at physically attacking his victims[]" does not mean that it failed to show that Defendant poses a danger. (*Id.* at 12.) Instead, it argues, the harm posed need not be violent, physical, or even tangible. (*Id.* (citing *United States v. Beard*, 528 F. Supp. 3d 764, 774 (N.D. Oh. 2021)).) The Government points to the fear experienced by the individuals as the harm posed, and it contends that "no condition or combination of conditions will reasonably assure the safety of the defendant's victims and the community[.]" (*Id.* at 13.)

### B.     *Opposition* (Doc. 29)

Plaintiff opposes the *Motion for Revocation*, arguing that the Government has "fail[ed] to demonstrate that revocation is warranted under the applicable legal standards." (Doc. 29 at 1.) Defendant argues that "the conditions of release previously imposed are sufficient to address any concerns." (*Id.*)

Defendant first focuses on the question of whether he poses a flight risk, arguing that "he has strong ties to the community through his mother, with whom he will reside upon release." (*Id.* at 2.) Defendant argues that "[t]his familial connection provides him with a stable living situation

5

and emotional support," which, in combination with the GPS monitoring ordered by the Court as a condition of release, would reduce the likelihood of any attempts at flight. (*Id.*)

Defendant then turns to the question of danger to the community. (*Id.* at 3.) He argues here too, the Government's assertions are "not substantiated by clear and convincing evidence." (*Id.*) Defendant argues that the state court judge who issued his first protective order "did not find that the defendant represented a credible threat or danger to the physical safety of the protected person." (*Id.*) The state court judge who issued his second protective order, he contends, did so pursuant to "a court approved consent agreement, as opposed to a judicial determination made after a contradictory hearing." (*Id.*) This, Defendant implies, undermines the state court judge's "finding that the defendant posed a credible threat to the protected person's safety[.]" (*Id.*) Defendant argues that the fact that he "was again allowed to remain out of custody[]" should be persuasive to the Court, as should the Magistrate Judge's determination. (*Id.*)

      C.     *Reply* **(Doc. 32)**

In its *Reply*, the Government maintains that this point made by Defendant—that past courts have permitted him to remain out of custody with conditions imposed on his release—in fact supports the Government's argument. (Doc. 32 at 1.) It argues "that previous courts have attempted to stop the defendant from sending his disturbing and virulent threats, and that has not worked." (*Id.*) Indeed, the Government contends, "the *only* thing that has been able to prevent the defendant from threatening and harassing his victims is confinement." (*Id.*) The Government argues that Defendant has repeatedly ignored the protective orders put into place by the state courts on February 17, 2025, and February 28, 2025, by threatening the targeted individuals repeatedly through the month of March, until he was "arrested again in late March and has remained in custody ever since." (*Id.* at 2–3.) The Government argues that Defendant's reliance on the state

6

courts' decisions to release Defendant on supervised release with protective orders in place "leaves out the most important fact: *the defendant did not comply with the order*." (*Id.* at 3.)

The Government further argues that the Court interpreted § 3142 too narrowly, acknowledging that this was in part due to its own inability "to point the court to any relevant case law at the time[.]" (*Id.* at 4.) Now, however, the Government asserts that "there is ample legal support for the proposition that the defendant and the court were interpreting the statute too narrowly." (*Id.*) It points to case law from multiple appellate and district courts stating that the danger of harm is not limited to physical harm or violence but can instead include broader harm. (*Id.* (collecting cases).) The Government points to cases involving this specific statute, in which "courts have held that a defendant's repeated threats to his victims pose a danger to others and cause harm to the community." (*Id.* at 5–6 (citing *United States v. Dai*, No. 3:23-CR-478, 2023 U.S. Dist. LEXIS 237124, at *25 (N.D.N.Y. Dec. 19, 2023); *United States v. Capriotti*, No. 21-CR-16, 2021 U.S. Dist. LEXIS 12223, at *17 (N.D. Ill. Jan. 22, 2021); *United States v. Waldman*, No. 18-MJ-4701, 2018 U.S. Dist. LEXIS 98548 (S.D.N.Y. June 12, 2018)).) The Government argues that the fear and intimidation caused by cyberstalking and threats, undeterred by protective orders, is itself harmful. (*Id.*)

The Government again contends that the four factors of § 3142(g) weigh in favor of detention, maintaining that the Magistrate Judge found that the first two factors weigh in favor of the detention and that the second two, in light of the case law now raised by the Government, likewise weigh in favor of detention. (*Id.* at 7–8.) The Government argues that Defendant is transient, with an untreated mental health condition and a history of substance abuse, which make him unlikely to comply with release conditions. (*Id.* at 7.) In addition, while the Government acknowledges Defendant's mother's "willingness to care for her son[,]" it contends that "[s]he is

7

clearly unable to control her son's conduct[,]" pointing to evidence in the record from the hearing before the Magistrate Judge showing that Defendant has threatened the targeted individuals while in his mother's presence. (*Id.*) The Government further argues that the case law it has now raised shows that Defendant's threats pose a danger to the individuals' emotional wellbeing, at minimum, as well as a harm to the community. (*Id.* at 8–9.) The Government asks the Court to maintain Defendant's detention because "no condition or combination of conditions will reasonably assure the safety of the defendant's victims and the community[.]" (*Id.* at 9.)

### III.  LEGAL STANDARDS

"The Bail Reform Act of 1984, 18 U.S.C. § 3142, *et seq.*, provides that upon the motion of a government attorney, a judicial officer must hold a hearing to determine whether any 'condition or combination of conditions will reasonably assure the appearance of the person as required, and the safety of any other person and the community.'" *United States v. Rueben*, 974 F.2d 580, 581 (5th Cir. 1992) (quoting 18 U.S.C. § 3142(e)).  Under this statute, "a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).

"Under the Bail Reform Act, the existence of probable cause to believe that the defendant committed" certain specified offenses "creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community." *Rueben*, 974 F.2d at 586 (citing 18 U.S.C. § 3142(e)). "The presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798.  "However, that presumption is not a mere 'bursting bubble' that totally disappears from the judge's consideration after the defendant comes forward with evidence." *Id.*

8

The Fifth Circuit has "held that Congress intended that the presumption remain [] in the case [as] a factor to be considered by the judicial officer." *Id.* (citations and quotations omitted). "Thus the mere production of evidence does not completely rebut the presumption[.] . . . The statute thus seems to create an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Id.* at 798–99.

Regarding the Government's burden of persuasion, "[t]he facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning" certain factors. 18 U.S.C. § 3142(g). These factors include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.*

9

"When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *Rueben*, 974 F.2d at 585 (citation omitted). "Absent an error of law, [the Fifth Circuit] must uphold a district court order 'if it is supported by the proceeding below,' a deferential standard of review . . . equate[d] to the abuse-of-discretion standard." *Id.* at 586 (citation omitted). The Fifth Circuit has stated:

> [I]n most cases, a trial court's review of a transcript of proceedings would, either as part of a de novo detention hearing, or as part of a review of a detention order under 18 U.S.C. § 3145(b) be sufficient to withstand appellate review. The district court has discretion in determining whether to conduct a supplementary evidentiary hearing as part of its de novo review. Accordingly, the district court has the discretion to conduct its de novo review by examining the pleadings and the evidence which was developed before the magistrate judge[.]

*United States v. Hensler*, 18 F.3d 936 (5th Cir. 1994) (cleaned up).

In addition, in *United States v. Flores*, the Fifth Circuit stated "[t]he district court only must review the evidence '*de novo* and make[] an independent determination' on a pretrial detention order." *Flores*, 53 F.4th 313, 316 (5th Cir. 2022) (quoting *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). It clarified that "[n]either the statute nor precedent requires a new hearing." *Id. See also United States v. Ashley*, 850 F. App'x 270, 271 (5th Cir. 2021) (stating "the district court did not err by not conducting a *de novo* detention hearing before adopting the magistrate judge's detention order"); *United States v. Jordan*, 2024 U.S. App. LEXIS 13994 at *2 (5th Cir. June 7, 2024).

**IV.    DISCUSSION**

Examining the factors set forth in 18 U.S.C. § 3142(g), the Court finds that the Government has established by clear and convincing evidence that there is no condition or combination of

10

conditions that will reasonably assure the safety of Defendant's alleged victims and the community.

A.  **The Nature and Circumstances of the Offense Charged**

First, the nature and circumstances of the offense charged weigh in favor of detention. Defendant is charged with multiple counts of cyberstalking and interstate threats. (Doc. 1 at 3–5.) Specifically, the indictment charges that Defendant sent an email to three individuals, who reside in the Middle District of Louisiana, "in which he said, in part, 'I will kill all 3 of you when I see you in person next . . . . Not a threat. A f****** promise.'" (*Id.* at 1.) He informed one individual that he knew where that person lived and repeatedly stated that he was going to kill that person. (*Id.* at 1–2.) Defendant threatened not only the targeted individuals but also their family members—with death and with graphic sexual violence. (*Id.* at 2.)

According to the indictment, beginning in mid-March of 2025, Defendant also began to threaten two additional people with death. (*Id.* at 3.) As with the three individuals in the Middle District of Louisiana, Defendant threatened at least one of these person's families and children. (*Id.*)

Defendant's threats are violent and graphic—he does not issue mere vague threats of violence or death but explicitly tells the recipients that he will "beat [them] to death . . . with [his] bare hands[,]" (Doc. 32 at 2 (citing Gov. Hrg. Ex. 8)); that he will "rip [an individual's] daughter's head off[,]" (*id.* (citing Gov. Hrg. Ex. 9)); and that he will break into the individual's home and "dog rape" his wife, (*id.* (citing Gov. Hrg. Ex. 10)). In addition, Defendant uses both sexual slurs and homophobic slurs towards the alleged victims and their family members while stating "I will kill you[]" and "I know where you live[,]" (Gov. Hrg. Ex. 2); saying "[d]eath to both of your c*** daughters and w**** wife[]" while threatening to "jump into your stupid prairieville [sic] window

11

and end your wretched life[,]" (Gov. Hrg. Ex. 5); and displays his genitals on camera while threatening sexual violence, (Gov. Hrg. Ex. 10).

The Court is therefore convinced that the nature and circumstances of the offense easily weigh in favor of detention. This was also the finding of the Magistrate Judge.

### B.  The Weight of the Evidence Against Defendant

With respect to the second factor, the weight of the evidence against Defendant, the Court emphasizes that this is not a determination of guilt. That is the province of the jury, and the Government must prove guilt beyond a reasonable doubt. However, the Court agrees with the Magistrate Judge's determination that there is sufficient evidence in the record to find that this factor weighs in favor of detention. The Court again looks at the emails, texts, phone calls, and videos entered into evidence by the Government at the hearing before the Magistrate, (Gov. Hrg. Exs. 1–5, 8–11), as well as those attached to the Government's *Response*, (Docs. 32-2, 32-3). The Court notes that a number of these were sent *after* protective orders had been issued by two different state court judges. (*See* Gov. Hrg. Exs. 6, 7.) There is substantial evidence of threatening behavior by Defendant—the Court has in evidence not only texts and emails but recordings of phone calls and video messages, which Defendant has not challenged. (*See* Gov. Hrg. Exs. 8–10.) Again, this is not conclusive proof of guilt: this is not the time or place to determine guilt and innocence. But this does show that the weight of the evidence is, at this point and for the purposes of this hearing, in favor of detention.

### C.  The History and Characteristics of Defendant

The Court now looks at Defendant's history and characteristics. Section 3142(g) instructs the Court to consider Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past

conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" § 3142(g)(3)(A). The Government points to the report from Pretrial Services, which recommended that Defendant be detained pre-trial. (Doc. 23-1 at 5.) Defendant reported to pretrial services that "he was diagnosed with Bipolar years ago" but that "he has never taken any medication[;]" his mother confirmed that "he has been diagnosed with Bipolar on two different occasions" but "has never taken any medication." (Doc. 11 at 4.) Defendant did not wish for this information to be shared with the Court, and he raised his voice to the pretrial officer when he was advised that the information would be shared with the Court. (*Id.*) Defendant then stopped disclosing information about his mental health. (*Id.*)

Defendant reported daily cannabinoid use beginning at age 23, without any history of substance abuse treatment. (*Id.*) Defendant is self-employed with no reported income in 2025, instead relying "on his crypto currency for living expenses." (*Id.* at 3.) While Defendant's mother lives in Lafayette, where he was raised and where he attended the University of Lafayette in the early 2000s, he appears to have few other ties to the community at present. (*Id.* at 2–3.) Indeed, prior to his arrest, he lived in Nevada, and he reported that "he has resided in many different states over the years including California, Nevada, and Arizona." (*Id.* at 2.) In addition to a number of arrests related to the instant offense, Defendant has been arrested in Lafayette, Louisiana, in 2012, for speeding and operating a vehicle while intoxicated, (*id.* at 4); in Austin, Texas, in 2015, for possession of marijuana, (*id.*); in Salina, Kansas, in January of 2025, for misdemeanor criminal trespass, (*id.*); in Reno, Nevada, in March of 2025, for driving under the influence, (*id.* at 5); and in Scott, Louisiana, in March of 2025, for simple criminal damage to property and criminal trespass, (*id.*). As of the May 13, 2025, none of these arrests have resulted in a conviction; their dispositions are either unknown or the charges were dropped. (*Id.* at 4–5.) One of the arrests related

13

to the current offense was in Scott, Louisiana, in February of 2025, for failure to appear for arraignment. (*Id.* at 5.)

The Government argues that merely having a parent in the city where Defendant grew up is not enough to establish ties to that city. (Doc. 23-1 at 10.) The Court further notes that Defendant's alleged victims appear to be former friends or acquaintances of his. While the Court values ties to the community, in cases of cyberstalking and internet threats towards former friends or acquaintances, it is difficult to know how to weigh the fact that Defendant may have other old friends or acquaintances in the community.

The Court takes into account Defendant's history of substance use, which led to multiple arrests if not convictions; his untreated mental health condition; his numerous arrests in multiple jurisdictions since the beginning of this year; his failure to appear at an arraignment in Scott, Louisiana, earlier this year; and his lack of meaningful ties in the Middle District or in Lafayette. With these facts in mind, the Court finds that this factor weighs in favor of detention.

In addition, the Court considers whether Defendant "was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentencing for an offense under Federal, State, or local law" at the time of the current offense or arrest. § 3142(g)(3)(B). The pretrial report does not list the outcome of Defendant's February 16, 2025, arrest in Scott, Louisiana, for failing to appear for an arraignment; his February 17, 2025, arrest in Ascension Parish, Louisiana, for cyberstalking; his March 14, 2025, arrest in Reno, Nevada, for driving while under the influence; or his March 31, 2025, arrest in Scott, Louisiana, for simple criminal damage to property and criminal trespass. (Doc. 11 at 5.) However, Defendant had two protective orders against him by two Louisiana state court judges at the time that he issued at least some of the threats alleged in the instant offense. (Doc. 23-1 at 5–7; Doc. 32 at 2–3.) The Court takes this, too,

14

into account in finding that this third factor—the history and characteristics of Defendant—weighs in favor of detention.

### D.   The Nature and Seriousness of the Danger Posed by Release

Finally—and perhaps most importantly—the Court looks to the nature and seriousness of the danger that would be posed to any person or to the community if Defendant were to be released. § 3142(g)(4). The Court accepts the Government's argument that "danger" goes beyond direct and immediate physical harm and violence.

Defendant is accused of repeatedly threatening physical harm to the recipients of these communications and their families. He told them that he knew where they lived, with references to their full names and those of their children, their hometowns or addresses, and the graphic violence he intended to inflict upon them. Defendant argues that he never took any steps to commit these violent acts and that he therefore did not pose a danger to these individuals or to the community. Defendant claims that the Court can impose conditions of release that will be sufficient to protect these individuals and the community.

However, the two protective orders imposed by the state courts were not sufficient to protect the recipients of these communications. On February 18, 2025, Judge John Smith of the 23rd Judicial District Court entered an order of protection with conditions of release pursuant to La. R.S. § 14:40.3, which prohibits cyberstalking. (Gov. Hrg. Ex. 6 at 2.) The state court judge ordered Defendant not to go within 100 feet of the protected person, who lives in Ascension Parish; not to go within 100 yards of the person's residence or household or to go to the person's school or place of employment; not to contact the person or their family, including via phone, text, email, or social media; and not to abuse, harass, assault, stalk, or otherwise threaten the protected person. (*Id.* at 3.) On February 25, 2025, Judge Toni F. Menard entered another order of protection with

conditions of release pursuant to La. R.S. § 46:2171, which prohibits non-intimate stalking. (Gov. Hrg. Ex. 7 at 2.) The state court judge found that Defendant represented "a credible threat to the physical safety of a family member, household member, or dating partner[]" and ordered him to surrender any firearms. (*Id.*) The state court judge again ordered Defendant not to go within 100 feet of the protected person, who lives in Ascension Parish; not to go within 100 yards of the person's residence or to go to the person's place of employment; not to contact the person or their family, including via phone, text, email, or social media; and not to abuse, harass, assault, stalk, or otherwise threaten the protected person. (*Id.* at 3.) Despite these findings and these orders, Defendant allegedly persisted in sending these communications, including to the specific individual protected by these orders of protection, throughout the month of March. (Doc. 32 at 2.) At least one of the recipients felt sufficiently intimidated by these threats to seek out protective orders, and these protective orders were not sufficient to prevent Defendant from allegedly continuing to send these messages.

Defendant is accused of sending these threats via texts, emails, phone calls, and video messages. He displayed his genitals on at least one video message and threatened to rape and kill the recipients' family members. The Court is convinced by the Government's arguments—and the case law it cites[1]—that the fear and intimidation these threats cause poses a danger to Defendant's alleged victims and to the community. When considering the presumption and substantial evidence leaning in favor of detention on this factor, the Court does not believe that Defendant's alleged victims and others in the community can be adequately protected by any conditions the Court can impose.

---

[1] The Government frankly admits that it failed to point the Magistrate Judge to case law supporting its position that "courts have held that a defendant's repeated threats to his victims pose a danger to others and cause harm to the community[,]" (Doc. 32. at 4, 5–6), but has brought these cases to the attention of the Court (*id*. at 5–6).

16

In summary: Defendant has previously been charged this year with failing to appear for arraignment, is self-employed with no reported income, has been arrested multiple times in the past six months, and has few ties to the Middle District of Louisiana; the Government has presented video recordings of Defendant issuing violent threats of a graphic and sexual nature against his former friends or acquaintances and their families, which he continued to do despite two protective orders issued by two state court judges. Considering all of this, the Court's *de novo* review of the record, and the testimony and evidence received into the record, the Court finds that the Government has demonstrated by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community, or will reasonably assure Defendant's appearance as required.

V. **CONCLUSION**

Accordingly,

The *United States' Motion for Revocation of Release Order* (Doc. 23) filed by the Government is **GRANTED**. The Magistrate Judge's decision is reversed, and Defendant is remanded to the custody of the United States Marshal.

Signed in Baton Rouge, Louisiana, on June 25, 2025.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**